Good morning, Your Honors. May it please the Court, Ted Folkman for the appellant, Sumanta Banerjee. Rule 4F3 does not permit a district court to authorize a method of service that is prohibited by a treaty. Our case is that here the Hague Service Convention applied and that it is mandatory. What that means is that when the convention applies, you have to use one of the methods of service that it permits. The only provision of the convention that even arguably could permit service by e-mail is Article 10A, the provision on postal service, if you were going to analogize e-mail to the post. But India, the relevant country here, has objected to all service under Article 10. Therefore, the e-mail service that Satis & Goldberg made was prohibited by the convention and it was an error for the district court to authorize it. Was the objection just a mail service or did it include e-mail service? The objection actually just says, and in fact I can quote the language to you, it basically says India objects to all service under Article 10. Did the district court make a finding of fact as to his citizenship or domicile? No, Your Honor. So it's implicit in the district court's decision that he was in India, that he resided in India. He's an American citizen living in India. That can't be used as a basis for diversity. That is correct, Your Honor. And as you know, we filed a motion to remand the case with instructions to dismiss. So it would have been very helpful for the district court to make a finding of fact as to his citizenship as well as his domicile. Well, if you're saying whether he was an American citizen or not, Your Honor, that's undisputed. The plaintiffs say that Satis & Goldberg admits that he's an American citizen in various of its filings in the district court and there really is no dispute that he is an American citizen. But as you know... If he was living in India. Correct. Correct. I would ask the district court to say, well, why don't you determine where he's domiciled and it kind of looks like it's Pittsburgh at the time, so why not make that decision and extend some time to serve him again in Pittsburgh with this new lawsuit and then there we go. We're off. Why do you object to that? I don't object to a remand necessarily for jurisdictional purposes, although we do think that here there is a judicial estoppel that applies. Satis & Goldberg successfully persuaded the court that Mr. Banerjee lived in India. And the reason we know that is because Rule 4F3, which is the rule that they used to get permission to serve by e-mail, only applies to service outside of the United States. Well, part of that is because his mother, when she got service, said, oh, yeah, he lives here, and then later on said, oh, no, I was wrong. He doesn't live here. Satis & Goldberg affirmatively pleaded in the second action that he lived in India. And you might ask a question, well, you know, the first action was dismissed because Satis had failed to plead its own citizenship. And in the first action, Satis & Goldberg did what one would do given what its theory is, the theory that Mr. Banerjee is a liar, that he actually lived in the United States. So what did they do? They served him at his wife's house in Pennsylvania, which would be perfectly good service if, in fact, what they say is true. The problem here is that once that case was dismissed, they didn't do that again. Instead, they said, we want to save some time, I suppose. We just want to serve him by e-mail. So we are going to affirmatively represent to the court that he lives in India. So, you know, I think it's not really right to say — Why should there be a stop when the mother said, oh, yeah, I'll accept the service, he lives here, and then later on changed her mind, said, oh, I was wrong, he doesn't live here. So — Fair ground for a stop. What the mother said was that he didn't live in a particular apartment in this large complex. And we don't — This is her first statement. Correct. And — And that's the problem here, is that the — your adversary was confronted with a moving — something of a moving target here as far as where your client's relatives were saying he was or was not living. Mr. Banerjee himself has had a consistent position throughout the case. He has given the same address — Throughout the case, I thought he didn't appear until after judgment was entered. That's true. From the moment when he brought his motion — That's the problem, is that now, judgment having been entered, it's your client's burden to show that it should not have been entered, right? Right. So let's distinguish the jurisdictional issue, which I understand there's an issue about was there subject matter jurisdiction at all. What I don't want to have happen is for a remand on that issue without the court deciding the issue about service. If you're going to remand and say we're going to give another attempt to serve, that's fine. But I think what would not be good would be to remand without deciding the service issue and just have the case proceed and then have another appeal in a couple years. Why do we need to decide the India service aspect of this if we send it back to determine domicile first? Well, because if the court determines that it had jurisdiction and Satis and then we're just going to be here in two years. If what you're saying is we're going to remand it, they're going to serve it again, perhaps serve it on counsel, whatever. Does his wife still live in Pittsburgh? His wife does still live in Pittsburgh. My problem with deciding the service question is if he's not — if the court decides that he's not living in India, then the issue never has to be addressed and we don't have to — we don't have to offer a view on whether the treaty or the provision you've cited does or does not allow e-mail service. That is fair, Your Honor. But I will say that this is an issue that recurs frequently and yet very rarely makes it to an appellate court. The case in which we deal with this only after judgment is entered by a party who comes in at that hour is the best case for deciding that. I actually think, Your Honor, this is a very good case for deciding it. And the reason is because it's just very rare to have a defendant, particularly a pro se defendant, actually preserve the issue, raise it on appeal. I don't know of any other case where that's happened. Where does your client live? Where does he live today? He is — Where does he live? Yeah. This is going to go back. Where does he live? Yeah, I — I want to be heard by the court. Tell us where he's living. Yeah, I believe he's living now in the United States. And I would simply say I haven't been retained to do the case in the district court, but it's — you know, I would not advise him to — He's been a very good payer, Your Honor. So — The answer is? The answer is we communicate by — we communicate by e-mail, Your Honor. Oh, you communicate with him by e-mail. I do. The service by e-mail is not permitted. Is that the argument? Your Honor, the treaty says what it says. Exactly. The treaty doesn't say anything about e-mail. That's right. But the whole point, and this is important, the whole point of the — To that extent that the district court is dealing with a rule that's not in violation of plain language in the treaty, you may have a more difficult argument. But my question to you was why we should address it at all. Right. So let me first — You just said your client is not a resident of India. So — Today. Today. Right. Correct. Sending it back? If you're sending it back to serve it again, that's fine, because all he wants is to litigate it on the merit. But I do want to address — He may not have to serve it again if — well, never mind. The only point I want to raise, Your Honor, it's important to understand that when we say the convention is mandatory, what we mean is not that if it's — it's not that whatever is not prohibited is permitted. It's that only the things that are permitted are permitted, and if it's not in there, it's prohibited. That's the point. That's the mistake that the lower courts that have ruled on this issue have made. They've all said, well, it doesn't say anything about e-mail, therefore it's okay. I would just encourage you to look at what the Supreme Court said in the Aerospatiale case, where it very specifically said the Hague Service Convention, unlike some other treaties, is mandatory in the sense that it's not just an optional extra method. When it applies, you have to use it. Thank you. You have reserved two minutes for rebuttal. We'll hear from — Thank you. Appellee. Good morning, Your Honors. I represent Sadis and Goldberg, the appellee. This is not an appeal where the defendant, Mr. Banji, is arguing that he never had actual notice. The judge ruled that he was served in compliance with due process. He didn't appeal actual notice. So the burden of proof rests on Mr. Banji to demonstrate that he wasn't properly served. Moreover, this Court is permitted to affirm on any grounds with that it could be found within the record, not simply the grounds that the district court found. With — How do we do that? If he's a U.S. citizen and his domicile is in India, we don't have subject matter jurisdiction. How do you do that with the record that we have? Well, I believe that the record that the Court has is sufficient to find domicile in the United States for two reasons. First, we've put in within the record at the district court level, when we discovered at somewhat later in the case, but when we discovered that he was actually in Pittsburgh and that he and his wife had built a home there, we've — What service are you relying on, then, if he's domiciled in Pittsburgh? So the language of the district court was that he had — the court had said that Mr. Banji's family had tried to stymie service and that we — the attempts had been made. What service are you relying on if he's domiciled in the United States? Service would then have to be valid under Rule 4e, which allows service in line with State law, in this case New York law, which allows service when it's impracticable — when a court makes a finding of impracticability, it allows service by e-mail. And — In India, though. Allows service by e-mail. He was sent to India, though. No, the e-mail was sent to Gmail, wherever he may be. And the truth is, although we believe that the evidence shows that he was domiciled in Pennsylvania and had previously been domiciled in Connecticut, and there is no sufficient evidence to show that he'd been domiciled in India, we don't know where he physically was at the — In India. I'm sorry? Yes, he served in India. Yes. But we sent — we sent both e-mail service to his Gmail account, wherever it — Gmail was everywhere. And, in fact, Google Host at the time had its — most of its service in the United States. It still does, and none in India. But we sent it to Gmail, and we also sent it to the Indian address where we had been told by his family that he had lived. And so we — and also it had been — that address had also been used in the District of Massachusetts litigation. Would it have been helpful in this case if the district court had made some findings of fact as to his domicile? It certainly would have been helpful, and I — it's understandable the district court — Would you ask the district court to do that? Sorry? Would you ask the district court to do that? We did not ask the district court to do that. We did put in the evidence as to his current place of — but we didn't ask for a finding of fact in that regard. Certainly when it comes to us, since we have no finding of fact as to where he was domiciled at the time you attempted to serve him in three different places. That's certainly true. It would have been helpful had the district court — we — the reality is, is that even if he had been domiciled in the United States, had he been in India at the time, Rule 4F3 would still apply. And so the service by email, the beauty of service by email, is that it allows the court to capture him wherever he's flying around the world. And he's a person who — If he's an American citizen who was domiciled in India, that wouldn't support diversity jurisdiction, as you know. Yes. No, absolutely, if he's domiciled in India. But if he was merely residing in India at his parents' apartment — Would you ask the district court to decide that question? Well, I believe that, like in Jacobs, the court here can make a determination of domicile on the appeal. In Jacobs, that was — the lower court had not made a finding as to the domicile of — So we have to look at those records from the contractor who filed the mechanics lien, the spelling bee record, the service on his wife in Pittsburgh. We have to do those kinds of things that a district court has to do then, right? Yes. But I believe that it is — it's quite simple. It's not that complicated, because the counterclaim that Mr. Barangay filed is his own counterclaim that he filed in Pittsburgh, where he declared that it was his home. He put his own address down as being in Pittsburgh. He filed it. And that should be sufficient. If there's going to be judicial stoppable in this case, he's to stop from claiming after the action and — You have a residence. It's not your domicile, though. That's true. You could have a residence without domicile. And to the extent he was living with his mother or some relative in India, we believe that is what happened. It was a residence, not a domicile. But when you build a home, and the case law supports this, that when you — the question is a question of fact. If you build a home together with your wife and children, that is as great an evidence of domicile as one could find. And the facts of domicile, the actions speaking louder than words, is more important than his affidavit where he claims to have been domiciled elsewhere. The state of play when this left the district court was with the — with Mr. Banerjee coming in and having been served on the assumption that he was domiciled in India, because after all of this rigmarole, that's — that's the last bit of information you had, right? I don't believe that's correct, Your Honor. It was — it was — the district court said that he resided in the — or just presumed it for the purposes of its decision that he resided there. But the district court made no finding as to domicile. So it's Judge Pooler's point. But that's the problem here is that we don't have a domicile decision by the district court that we will either affirm or reverse. That's correct. And that is, to the degree that the court feels, a problem. But the court can, like the court did in Jacobs, make its own finding of domicile. So if the court did that, we send it back, the district court says, all right, I've looked at all the evidence. His domicile is Pittsburgh. He hasn't been served there, though. So how would that be accomplished? He was served there in the prior lawsuit. So that doesn't mean anything for this case. So what would the court do? You'd make an application to serve him again under Rule 4? Is that what you'd do? Your Honor, I don't believe that would be necessary because the court's service that it ordered by email is also valid under Rule 4E. And the court's finding that there was an attempt to serve him and that it was impracticable because his family was trying to stymie service, that same finding that it found with respect to Rule 4F applies equally to the impracticability standard under Rule — under CPLR 3085 and Rule 4E. So I don't believe that would be necessary. There's one issue that I believe — well, multiple issues with respect to Rule 4.3 that my opponent didn't raise, which is that the advisory committee notes under Rule 4F.3 lay out how the writers of that rule understood the Hague Service Convention to operate. And they understood that one tries through the central authority in the first instance. And where that attempt fails, which occurred over here, then the Rule 4F.3 exists for situations where you could provide service by means not prohibited by the Hague Service Convention, but not prohibited — not prohibited by the Hague Service Convention, but also not specifically provided for. And according to Mr. Folkman, there is no such situation. That's a null set, because anything that's not provided for explicitly in the agreement is excluded by the same agreement. So the Rule 4F.3, as it's set up, with the first Rule 4F.1 being providing service through the Hague Service Convention, and then Rule 4.3 being a situation where you can serve where there's no prohibition after attempting through the Hague Service Convention, that whole structure of the rule and the advisory committee notes demonstrate that the Hague Service Convention does not prohibit everything that's not written in it. There's no provision in the Hague Service Convention that says anything not — any service not explicitly laid out herein is hereby prohibited forever. That's not there. And what's — one thing that we only discovered in preparing for this oral argument, and perhaps we should have realized it earlier, India allows service by e-mail internally. And this Court in Burda Media, when it laid out the Hague Service Convention or the things this Hague Service Convention allows, one of them is what the internal laws of the State allow. In a footnote — in a footnote, Mr. Berenji said that that's only when it allows service coming from abroad. And that question of how to interpret that part of the Hague Service Convention is open. It hasn't been decided by this Court. Other courts have felt — have held that anything within the internal laws, we don't differentiate between coming from abroad or not. But more importantly, the burden resides on Mr. Berenji to show that it doesn't allow it. And Article 15 of the — of the Hague Service Convention, in dealing with judgments, leaves out the coming from abroad language, the abroad language that was cited in Article 19. And so when it comes to trying to avoid a default judgment, it's Article 15 that would govern. I know you're urging us to view this record as one in which there was constant efforts to stymie service. But let me ask you this. If we were to remand — and I'm going to ask this of your adversary, too — couldn't the district judge simply order the defendant — it's his motion to vacate this judgment — to appear and to provide evidence as to his domicile at the time he was served? And if, in fact, his domicile was the United States and the district court wants to rely on Rule 4 and the service as you've provided, it can deny the motion to vacate judgment. On the other hand, if after seeing evidence, the district court concludes that his domicile at the relevant time was India, it might have to conclude it lacked jurisdiction at that point. You would then decide whether you would be able to serve him because his counsel now represents to us he's now a — he's now domiciled in the United States. But doesn't that at least clean up all of this? Your Honor, this case has been going on for almost nine years now. Mr. Banerjee has owed his fees. I know — You're suggesting that it only takes one court appearance on this one, though, to get this cleared up. But I suspect that it would take more than that. I think discovery would have to be taken. If the court were to then reopen the issue of domicile, we would have — and Mr. Banerjee would come in and say — make his, you know, statements, his affirmative statements as to where his domicile was. Then Satis and Goldberg would then have to be entitled to challenge it by taking a deposition, by getting some — you know, asking him to produce your tax returns, you know, let's see that actual evidence. And that's going to take a long time. All right. Thank you. Thank you. Mr. Folkman, you have two minutes for rebuttal. Thank you, Your Honor. Is it your client's position that he was domiciled in India at the time of the service? Yes. Yes. And what has he put forward to demonstrate that? Because it is his burden on this motion. Well, so it's not his burden to prove domicile in this motion. It's his burden to say — He wants to lift a judgment, and his argument is lack of subject matter jurisdiction. He has to at least show a colorable basis for that. So to the extent his argument is I was not — I'm a U.S. citizen, but I was domiciled in India, what has he put forward to support that? So in the record, there are really two things. One is his affidavit, and the second is the complaint itself, which we cite a case for the proposition is a binding — He himself has put forward nothing. Well, he's put forward his affidavit. That's correct. Now, in our motion papers on the motion to remand, we've made representations about what we could put forward if there were a remand. And that includes leases. That includes a separation agreement from his wife in 2012. That includes other documentation. Inclusively. That's correct. That's right. It's an issue that is fair to litigate. That's right. But it was not litigated below. That's absolutely correct. I just want to leave you with two points, Your Honor. The first, you asked a question, Judge Raji, what source — what service are you relying on if you're not relying on the service in India? My — I'm relying, as counsel has repeatedly said, on e-mail service. Yes. Wherever your client is. Yes. So what he says about that is that Section 3085 of the CPLR would have authorized service by e-mail because service was impracticable. But we know that that's not true. Because if, as he now says, Mr. Banerjee lived in Pittsburgh, which is what they claim, then they could have done exactly what they did in the first action in the second action. They could have served Mrs. Banerjee or just left the — No, no, no. It wasn't. That's correct. It wasn't factually true. Your client's or his relative's conduct here raises many questions and concerns about their dealing here. So, you know, I'm not sure you can say they can't rely on something arguing a position that's contrary to what you're now saying the true facts are. All I'm saying, Your Honor, is that if the service in India was no good because he didn't live in India and he lived in Pittsburgh, they took no steps to serve him in Pittsburgh, which they easily could have done. They're saying, though, that they could serve him — given all the rigmarole they got run if he was living in Pittsburgh, they could serve him by e-mail, given everything that happened. And your answer to that is what? My answer to that is that's incorrect because if he lived in Pittsburgh, they had very easy and practical methods to serve him. And so Rule 3085 doesn't apply. Thank you. Thank you both.